IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JUNE SCHINDLER,

                    Plaintiff,

  v.                                                OPINION and ORDER

GREAT PLAINS FINANCE, LLC, d/b/a CASH
ADVANCE NOW, W6LS, INC. d/b/a WITHU LOANS,       24-cv-328-jdp
and ROSEBUD LENDING d/b/a ZOCA LOANS,

                    Defendants.[1]

---

        Plaintiff June Schindler brings this lawsuit against three payday lenders, all owned and managed by Indian tribes. She alleges that each defendant, without her permission, obtained her credit report and disseminated its contents to various third parties, in violation of the Fair Credit Reporting Act (FCRA). Two of the defendants—Great Plains Finance, LLC and W6LS, Inc.—move to dismiss, asserting that they have sovereign immunity from FCRA civilian suits under *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818 (7th Cir. 2016). Dkt. 11 and 29. Alternatively, they move to sever the claims because they arise out of unrelated transactions. They also move to stay discovery. Dkt. 36.

        The court will grant the motions to dismiss. Schindler concedes that Great Plains and W6LS are arms of the tribe, and they are entitled to sovereign immunity under the holding in *Meyers*. But Schindler contends that the Supreme Court "abrogated" *Meyers* in two recent cases,

---

[1] The court previously granted Schindler's motion to voluntarily dismiss Patria Lending without prejudice because she was unable to serve this defendant. Dkt. 26 and Dkt. 31. The court has amended the caption to reflect that change.

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382 (2023), and *Dep't of Ag. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42 (2024). The court concludes that *Coughlin* and *Kirtz* did not overrule *Meyers*, either expressly or implicitly, so this court remains bound by *Meyers*. If Schindler believes that *Meyers* is no longer viable, she will have to raise that issue with the court of appeals. This court's decision to grant the motions to dismiss moots the other pending motions.

Defendant Rosebud Lending did not file its own motion to dismiss or join the other defendants' motions. But the court may dismiss a party on the court's own motion when granting another defendant's motion would bar the claim against the non-moving defendant. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 384–85 (7th Cir. 2008). Rosebud raised a tribal sovereign immunity defense in its answer, Dkt. 14, at 17, and Schindler affirmatively alleged in her complaint that Rosebud is an arm of the Rosebud Sioux Tribe. So the court will dismiss Rosebud and direct the clerk of court to enter judgment.

ANALYSIS

An arm of a tribe has immunity from suit unless Congress enacts a statute that "unmistakably" abrogates that immunity. *FAA v. Cooper*, 566 U.S. 284, 291 (2012). In this case, Schindler argues that the FCRA clearly abrogates immunity because the FCRA prohibits "[a] person" from obtaining or disseminating a credit report without authorization, 15 U.S.C. § 1681b(f), "person" is defined in the statute as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity," 15 U.S.C. § 1681a(b), and defendants are part of the tribal "government."

2

As Schindler acknowledges, the court of appeals rejected a similar argument in *Meyers*, concluding that the reference to "any . . . government" in § 1681a(b) is not "a clear, unequivocal statement . . . that Congress meant to abrogate the sovereign immunity of Indian Tribes." 836 F.3d at 826. Schindler argues that this court may disregard *Meyers* because it is undermined by the Supreme Court's decisions in *Coughlin* and *Kirtz*. Schindler cites *Olson v. Paine Webber*, 806 F.2d 731, 734 (7th Cir. 1986), for the proposition that a lower court may disregard a higher court's decision if "events subsequent to the last decision by the higher court approving the doctrine—especially later decisions by that court, or statutory changes—make it almost certain that the higher court would repudiate the doctrine if given a chance to do so."

*Olson* was not about district courts disregarding a court of appeals decision; it was about the court of appeals disregarding the Supreme Court. And the court of appeals has long since abandoned the view espoused in *Olson*, repeatedly stating that it may not disregard Supreme Court precedent based on a belief that the Court would change its mind in light of newer cases. For example, in *Saban v. U.S. Dept. of Labor*, 509 F.3d 376, 378 (7th Cir. 2007), the court stated that "lower courts . . . are not to anticipate the overruling of a Supreme Court decision, but are to consider themselves bound by it until and unless the Court overrules it, however out of step with current trends in the relevant case law the case may be." *See also U.S. v. Blagojevich*, 612 F.3d 558, 562 (7th Cir. 2010); *National Rifle Ass'n of America, Inc. v. City of Chicago, IL*, 567 F.3d 856, 857–58 (7th Cir. 2009). The court of appeals applied a similar principle to a district court in *Taco Bell Corp. v. Continental Cas. Co*, concluding in a diversity case that the district court was correct to continue following a Seventh Circuit case that had been significantly undermined by subsequent state-court decisions, reasoning that "a lower court cannot overrule the decision of a higher one." 388 F.3d 1069, 1077–78 (7th Cir. 2004).

3

This is all to say that it is not for a lower court to predict when a higher court might overrule its own precedents in light of subsequent cases. Unless a Supreme Court decision directly conflicts with a Seventh Circuit decision, it is for the court of appeals to determine whether to overrule itself. Neither *Coughlin* nor *Kirtz* directly conflict with *Meyers*, so this court must follow *Meyers* and grant the motions to dismiss.

In *Coughlin*, the Supreme Court considered whether the Bankruptcy Code abrogates tribal sovereign immunity. The code states that "sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section," 11 U.S.C. § 106(a), and it defines "governmental unit" as "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . . , a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government," *Id.* § 107(21).

In concluding that the code abrogated tribal immunity, the Supreme Court relied primarily on the "expansive" and "all-encompassing" definition of "governmental unit" in § 107(21). *Coughlin*, 599 U.S. at 389, 398. The Court observed that the definition "exudes comprehensiveness" because it includes both a long list of governments of varying types and a "broad" catchall phrase that includes any other foreign or domestic government. The pairing of those "two extremes" shows that "Congress unmistakably intended to cover all governments in § 101(27)'s definition, whatever their location, nature, or type," including tribal governments. *Id.* at 389–90. The Court also relied on the purpose of the bankruptcy code to protect all debtors: "Reading the statute to carve out a subset of governments from the definition of 'governmental unit' . . . [would] risk[] upending the policy choices that the Code embodies." *Id.* at 390.

4

*Meyers* is readily distinguishable from *Coughlin* because the FCRA does not include the same breathtakingly broad definition of "government" that is in the bankruptcy code. In fact, the court of appeals made that very point in *Meyers*. The plaintiff in *Meyers* relied on *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055 (9th Cir. 2004), in which the court anticipated *Coughlin* by holding that the bankruptcy code abrogates tribal sovereign immunity. After acknowledging there was a circuit split on whether the code abrogates immunity, the court in *Meyers* concluded that it did not need to weigh in on the conflict because the bankruptcy code and § 1681a(b) use different language. 836 F.3d at 826. In other words, the court of appeals anticipated the argument that Schindler is making now, and the court rejected the argument. Shortly after the Supreme Court decided *Coughlin*, the court of appeals again emphasized that the definition in the bankruptcy code "cover[s] the waterfront of governmental units by using catch-all language." *Mestek v. LAC Courte Oreilles Community Health Center*, 72 F.4th 255, 259 (7th Cir. 2023). That is not the situation in § 1681a(b), so *Coughlin* does not conflict with *Meyers*.

*Kirtz* does not directly conflict with *Meyers* either. In *Kirtz*, the Court considered whether the FCRA abrogated sovereign immunity of the U.S. Department of Agriculture. The Court concluded that it did because the FCRA applies to a "person," a person is defined in part as "any . . . governmental . . . agency," and the department is a governmental agency. *Kirtz*, 601 U.S. at 51. The Court also noted that several provisions in the FCRA refer directly to the federal government, supporting the inference that Congress intended the FCRA to apply to federal agencies. *Id.*

The court of appeals anticipated *Kirtz* in *Bormes v. United States*, when it held that the FCRA abrogates the federal government's sovereign immunity. 759 F.3d 793 (7th Cir. 2014). But the court of appeals distinguished *Bormes* in *Meyers*:

> It is one thing to say "any government" means "the United States." That is an entirely natural reading of "any government." But it's another thing to say "any government" means "Indian Tribes." Against the long-held tradition of tribal immunity . . . "any government" is equivocal in this regard. Moreover, it is one thing to read "the United States" when Congress says "government." But it would be quite another, given that ambiguities in statutes are to be resolved in favor of tribal immunity, to read "Indian tribes" when Congress says "government."

836 F.3d at 826 (adopting the district court's order reasoning). In other words, the court of appeals concluded that the "government" unambiguously applies to the United States, but a clearer expression of congressional intent is required to abrogate tribal sovereign immunity.

The bottom line is that *Meyers* expressly considered the issues raised in both *Coughlin* and *Kirtz*. Specifically, the court concluded that the FCRA was distinguishable from the bankruptcy code and that an unequivocal abrogation of the federal government's sovereign immunity does not mean that Congress also intended to abrogate tribal sovereign immunity. Regardless of whether Schindler believes those conclusions are correct, they are not contradicted by *Coughlin* or *Kirtz*. So this court remains bound by *Meyers* and must dismiss the case because defendants are entitled to sovereign immunity.

ORDER

IT IS ORDERED that:

1. Defendant Great Plains Finance, LLC's motion to dismiss, Dkt. 11, is GRANTED.

2. Defendant W6LS, Inc.'s motion to dismiss, Dkt. 29, is GRANTED.

3. This case is DISMISSED with prejudice on the ground that each of the defendants is entitled to tribal sovereign immunity.

4. The motion to stay, Dkt. 36, is DENIED as moot.

5. The clerk of court is directed to enter judgment and close this case.

Entered November 4, 2024.

        BY THE COURT:

        /s/

        _____
        JAMES D. PETERSON
        District Judge